**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

ELIZABETH P.,

                                          Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,                No. 3:20-CV-891
                                                (CFH)

                                          Defendant.

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761
Attorneys for plaintiff

Social Security Administration            CANDACE LAWRENCE, ESQ.
J.F.K. Federal Building,
15 New Sudbury Street, Rm. 625
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Elizabeth P.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl."). Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 13.  The Commissioner cross-moves for judgment on the pleadings.  See Dkt. No. 18. Plaintiff replies.  See Dkt. No. 19-1.  For the following reasons, the Commissioner's cross-motion for judgment on the pleadings is denied and the determination of the Commissioner is reversed and remanded for further proceedings.


## I. Background

On February 20, 2018, plaintiff filed Title II and Title XVI applications for disability insurance benefits and supplemental security income.  See T. at 204-11, 220-22.[3] Plaintiff alleged a disability onset date of August 19, 2015.  See id. at 205.  The Social Security Administration ("SSA") denied plaintiff's claim on May 8, 2018.  See id. at 118. Plaintiff requested a hearing, see id. at 143, and a hearing was held on August 28, 2019, before Administrative Law Judge ("ALJ") Gretchen Mary Greisler.  See id. at 35-85.  On October 9, 2019, the ALJ issued an unfavorable decision.  See id. at 14-28.  On June 8, 2020, the Appeals Council denied plaintiff's request for review.  See id. at 1-5. Plaintiff commenced this action on August 6, 2020.  See Compl.


## II. Legal Standards

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 12.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks, citation, and emphasis omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since August 19, 2015, her

alleged onset date.  See T. at 17.  At step two, the ALJ found that plaintiff had the following severe impairments: "trochanteric bursitis in the left hip, sprain of left knee and ankle, obesity, migraine headache, irritable bowel syndrome, colitis, gastroesophageal reflux disease, tarsal tunnel syndrome in the left foot, myalgia polyarthropathy, attention deficit hyperactivity disorder, report of borderline intellectual functioning, provisional post traumatic stress disorder, and anxiety disorder[.]"  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id.  The ALJ determined that plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  See id. at 18-19.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except

> [she] requires a brief 1-2 minute change in position after sitting, standing or walking for 30 minutes but retains the ability to remain on task; the claimant can occasionally stoop and climb stairs and ramps but cannot crouch, crawl, kneel, climb ladders, ropes or scaffolds or work at unprotected heights; the claimant cannot perform more than rudimentary math; the claimant is able to remember and carry out very short and simple instructions without additional cues or reminders; the claimant should not work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow him or her to sustain a flexible and goal-oriented pace; the claimant can tolerate occasional interaction with supervisors, coworkers and the public; the claimant can perform work involving only simple, work-related decisions and few, if any, workplace changes; the claimant requires ready access to a restroom but the need to use the restroom can be accommodated by the normal morning, lunch and afternoon breaks and an additional five minute break each morning and afternoon; and the claimant should avoid work outdoors

in bright sunshine and work with bright or flickering lights such as would
be experience[d] in welding or cutting metals.

Id. at 21.  At step four, the ALJ determined that plaintiff was unable to perform

relevant past work.  See id. at 27.  At step five, considering the plaintiff's age,

education, work experience, and RFC, the ALJ concluded that there were jobs

that existed in significant numbers in the national economy that plaintiff could

perform.  See id.  Thus, the ALJ determined that plaintiff had "not been under a

disability, as defined in the Social Security Act, from August 19, 2015, through

the date of this decision[.]"  Id. at 28.


### IV. Arguments[4]

Plaintiff argues that the ALJ (1) "d[id] not properly assess [p]laintiff's limitations to

time off-task and/or attendance"; (2) "d[id] not include appropriate limitations in the

RFC"; (3) legally erred in assessing the medical opinions of record under 20 C.F.R.

§§ 404.1520c(a)-(c), 416.920c(a)-(c);[5] (4) erred in her step-five determination and

(5) erred in relying on state agency medical consultant, E. Kamin, Ph.D.'s, opinion.  Dkt.

No. 13 at 13, 25.

The Commissioner argues that the ALJ was entitled to discount all of the medical

opinions opining off task or absenteeism limitations because they are not supported by

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages'
headers.
[5] 20 C.F.R. § 404.1520c contains the relevant regulations for Title II applications.  20 C.F.R. § 416.920c
reflects identical rules for claimants filing under Title XVI.  Plaintiff filed an application under both Titles.
See T. at 204-11, 202-22.  Throughout this Memorandum-Decision and Order, the Court will reference
the Title II regulations as that is what plaintiff primarily cites in her brief.  See Dkt. No. 13 at 20, 23-24.

the record.  See Dkt. No. 18 at 6-11.  The Commissioner also argues that the ALJ

appropriately considered Dr. Kamin's opinion and the 20 C.F.R. § 404.1520c(a)-(c)

factors, and that the step-five determination is supported by substantial evidence.  See

id. at 26; 20-22, 27.

## V. Discussion

A plaintiff's RFC is defined as "what an individual can still do despite his or her

limitations. . . .  Ordinarily, RFC is the individual's maximum remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis[.]"

Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel,

198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional

capacity determination, the ALJ must consider a claimant's physical abilities, mental

abilities, [and] symptomology, including pain and other limitations which could interfere

with work activities on a regular and continuing basis."  Id. (citing 20 C.F.R. §

404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an

individual's response to demands of work . . . must be reflected in the RFC

assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3

(N.D.N.Y. Dec. 11, 2012) (alteration in original) (quoting Titles II & XVI: Capability to Do

Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely

Nonexertional Impairments, Social Security Rulings ("SSR") 85-15, 1985 WL 56857, at

*6 (1985)).  The RFC determination "must be set forth with sufficient specificity to

enable [the Court] to decide whether the determination is supported by substantial

evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).  A mental health "RFC assessment process requires 'a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . .'" <u>Linda E. v. Saul</u>, No. 3:19-CV-357 (NAM), 2020 WL 1875671, at *8 (N.D.N.Y. Apr. 15, 2020) (quoting Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996)).

"Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence . . . ." <u>Dumas v. Comm'r of Soc. Sec.</u>, No. 7:13-CV-1099 (GTS/TWD), 2015 WL 1403342, at *13 (N.D.N.Y. Mar. 26, 2015).  Under the new regulations applicable to plaintiff's claim, the Commissioner will no longer give specific evidentiary weight to medical opinions.  <u>See</u> <u>Warren I. v. Comm'r of Soc. Sec.</u>, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *4 (N.D.N.Y. Mar. 8, 2021).  Rather, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on: supportability; consistency; relationship with the claimant (which includes the length of treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and examining relationship); specialization; and "other factors."  20 C.F.R. § 404.1520c(a)-(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  <u>Id.</u> § 404.1520c(a) and (b)(1).  The ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  <u>Id.</u> § 404.1520c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2).  "If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).  The ALJ is generally "not required to, explain how [he or she] considered the" remaining factors. 20 C.F.R. § 404.1520c(b)(2).  However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he or she] will articulate how [he or she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions . . . ." Id. § 404.1520c(b)(3).

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she] [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" Smith v.

10

Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).  Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question []; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision."  Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted).  The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ."  April B. v. Saul, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).

"It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims."  Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021).  "[A]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision."  Renalda R. v. Comm'r of Soc. Sec., 20-CV-0915 (TWD), 2021 WL 4458821, at *5 (N.D.N.Y. Sept. 29, 2021) (citations and quotation marks omitted).

### A. Consistency and Supportability of Opinions

Plaintiff argues that the ALJ failed to articulate how she found each medical opinion consistent with, or supported by, the record as required under 20 C.F.R.

§ 404.1520c(b)(2).  See Dkt. No. 13 at 20.  The Commissioner contends that "[t]he ALJ expressly considered both factors in evaluating each opinion."  Dkt. No. 18 at 24.

### 1. Consultative Examiners and State Agency Medical Consultants

### a. Opinions Related to Plaintiff's Mental Limitations

Amanda Slowik, Psy.D., performed plaintiff's consultative psychiatric evaluation. She noted, in relevant part, that plaintiff had restless motor behavior and was fidgeting during the examination; plaintiff's "[t]hought processes were often tangential and at times totally out of context to the conversation"; her affect and mood were anxious and somewhat exaggerated; and her "[a]ttention and concentration were moderately to markedly impaired due to a lack of effort and some anxiety[.]"  T. at 372-74.  Dr. Slowik determined that plaintiff was moderately limited in sustaining concentration.  See id.  Dr. Slowik explained that plaintiff's "[d]ifficulties are caused by distractibility, cognitive deficits, personality dysfunction, and anxiety" but "it is unclear as to whether or not they are significant enough to interfere with [her] ability to function on a daily basis."  Id. Finally, Dr. Slowik stated that plaintiff would "need assistance in managing her funds, due to self-reported difficulties in this area."  Id. at 375.  The ALJ considered Dr. Slowik's opinion to be "partially persuasive because . . . Dr. Slowik did not opine on the claimant's ability to understand and remember simple instructions and routine."[6]  Id. at 24.  Moreover, the ALJ concluded that, "[w]hile Dr. Slowik's opinion was generally consistent with the examination findings, the overall records, including the claimant's

---

[6] In Dr. Slowik's medical source statement she wrote, "[t]he claimant's ability to understand simple directions and instructions; sustain an ordinary routine.  The claimant's ability to understand and comply complex directions and instructions and interact adequately with supervisors, co-workers, and the public, as well as regulate emotions is moderately to markedly limited."  T. at 374.  The first sentence appears incomplete, and the Court cannot determine the level of limitation Dr. Slowik intended to opine related to plaintiff's ability to understand simple directions and instructions.

activities of daily living and course of mental health treatment, support slightly less severe restrictions."  Id.[7]

The ALJ mentioned that "Dr. Slowik opined that the claimant had moderate limitations being able to sustain concentration" and, in a separate part of the decision, noted Dr. Slowik's examination finding that plaintiff's attention and concentration were moderately- to markedly-impaired.  T. at 24; 23; see Jeanette J. v. Saul, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) ("It is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses."); cf. West v. Comm'r of Soc. Sec., No. 5:15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *7 (N.D.N.Y. Oct. 18, 2016), report and recommendation adopted, 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) ("[A] reading of the ALJ's decision as a whole indicated that the ALJ applied the proper legal standard and substantial evidence supported her credibility determination.").  However, the ALJ did not mention Dr. Slowik's examination finding that plaintiff's "[t]hought processes were often tangential and at times totally out of context to the conversation"—a finding that appears consistent with other providers' notes and opinions that plaintiff had more severe limitations in maintaining attention and concentration.  T. at 373; see Andrea G. v. Comm'r. of Soc. Sec., No. 5:20-CV-01253 (TWD), 2022 WL 204400, at *5 (N.D.N.Y. Jan. 24, 2022) (finding no error in the ALJ's rejection of a time off task limitation where the consultative psychologist found that the plaintiff "was cooperative with coherent and goal-directed thought processes," her "attention and concentration were intact").  The ALJ summarily concluded that Dr. Slowik's more severe limitations were unsupported

---

[7] In referencing Dr. Slowik's opinion, the ALJ cited "Exhibit 4F."  T. at 24.  This appears to be a scrivener's error as Dr. Slowik's opinion is located at Exhibit 3F.  See id. at 371-75.

by plaintiff's "course of mental health treatment[]" but failed to explain the correlation. See T. at 24; see also Pamela P. v. Saul, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (finding error where, "[i]n partially rejecting Slowik's opinion, the ALJ offered only that her stated limitations were an 'overstatement of the claimant's mental functioning' with no effort to quantify or explain in what way this was true."). Plaintiff saw a therapist throughout 2017, 2018, and 2019. See T. at 388-405, 440-68. As explained below, plaintiff's treating therapist noted continuously tangential thoughts during counseling sessions and similarly opined more severe limitations. See id. at 388-89, 395, 415. The record reflects a gap in plaintiff's counseling sessions between November 2018 and June 2019. See id. at 455, 458. However, the ALJ does not explain whether it was because plaintiff was receiving treatment, the gap in treatment, the findings during treatment, or another factor, that "support slightly less severe restrictions" than Dr. Slowik reached. Further, based on a review of the record, the Court cannot determine her rationale.

State agency medical consultant E. Kamin, Ph.D., opined that plaintiff was not significantly limited in her ability to remember locations and work-like procedures; understand, remember, or carry out very short and simple instructions; ask simple questions and request assistance; maintain socially-appropriate behavior; and adhere to basic standards of neatness. See T. at 95-96. Dr. Kamin determined that plaintiff was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods of time, work in coordination with others without being distracted, complete a normal workday without interruptions from her psychologically-based symptoms, perform at a consistent pace, respond appropriately

14

to changes in the workplace, and set realistic goals.  See id. at 95-96.  Dr. Kamin found "no evidence of limitation[s]" related to plaintiff's ability to: make simple, work-related decisions; perform activities within a schedule; maintain a regular schedule; sustain an ordinary routine without supervision; be aware of normal hazards; or travel to unfamiliar places.  See id. at 95-96.  In explaining these limitations, Dr. Kamin wrote "see below[,]" and in the "additional explanation" section he recounted Dr. Slowik's consultative examination findings.  Id. at 96-97.  Dr. Kamin determined that plaintiff "retain[ed] the ability to perform unskilled work on a sustained basis."  Id. at 97.  The ALJ reviewed Dr. Kamin's opinion and found it to be "partially persuasive.  The totality of the record supported additional limitations on the claimant's mental functioning ability.  Generally, Dr. Kamin's opinions were consistent with the record.  Dr. Kamin had the opportunity to review the record, and Dr. Kamin has knowledge of the agency's program and its evidentiary policies."  Id. at 24.

The ALJ did not explain what records supported additional limitations.  See T. at 24.  Dr. Kamin did not examine plaintiff and primarily relied on Dr. Slowik's examination, but as plaintiff notes, they came to slightly different conclusions, creating inconsistencies that the ALJ did not reconcile.  See id. at 96-97, 374; see Dkt. No. 13 at 26.  For example, Dr. Slowik did not address whether plaintiff was limited in her ability to understand and apply simple directions, and Dr. Kamin found she was "not significantly limited" in carrying out very short and simple instructions.  T. at 95; 374.  Dr. Slowik determined that plaintiff was moderately- to markedly-limited in understanding and complying with complex directions and instructions, interacting with others, and regulating emotions, but Dr. Kamin found that she was only moderately limited in each

category.  See id. at 95-96, 374.  It is not evident what records Dr. Kamin reviewed to conclude that plaintiff's abilities were moderately limited.  See id. at 95-95.  Dr. Slowik also concluded that plaintiff was mildly- to moderately-limited in making work-related decisions, but Dr. Kamin found "[n]o evidence of limitation in this category."  Id. at 95, 374.  As Dr. Kamin reiterated Dr. Slowik's conclusions verbatim, the Court is unable to determine why Dr. Kamin found "no evidence" of this limitation.  Id. at 95.  The ALJ's conclusory reference to Dr. Kamin's expertise and "the totality of the record" fails "to meet the[] minimum levels of articulation [and] frustrates this [C]ourt's ability to determine whether her disability determination was supported by substantial evidence."  Id. at 25; Warren I., 2021 WL 860506, at *8; see also Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (finding error where "[t]he ALJ provided no substantive explanation for her conclusion that [an] opinion was persuasive, making only general reference to the state agency consultant's expertise and experience, and his review of the available record.").

Upon examination, Adam Krantweiss, Ph.D., determined that plaintiff's IQ was 75, placing her in the "Borderline to Low-Average Range."  T. at 408.  He assessed that her "reading and spelling are high enough to suggest she would be able to function in the workplace.  Her lower score on math suggests she would struggle in a job where anything beyond rudimentary understanding of math was required."  Id. at 410.  The ALJ summarily stated that "Dr. Krantweiss' opinion was persuasive and consistent with the record as well as the examination findings."  Id. at 26.  This cursory explanation is insufficient to "explain how [she] considered the supportability and consistency factors."  20 C.F.R. § 404.1520c(b)(2) (emphasis added); see Jaleesa H. v. Comm'r of Soc. Sec.,

16

No. 1:20-CV-01180 (EAW), 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022) (remanding where "the ALJ did not *explain* anything—instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations."). Dr. Krantweiss noted that during plaintiff's examination "[t]here was no evidence of circumstantial or tangential thinking and no disorganization was observed."  T. at 408. He also opined that plaintiff's "Working Memory Index score," which "is a reflection of a test-taker's attention, concentration, and ability to hold and manipulate simple information in memory in order to complete a task[,]" was in the borderline range.  Id. at 409.  Without sufficient explanation, the Court cannot determine whether the ALJ's conclusion as to the opinion of Dr. Krantweiss is supported by substantial evidence, particularly where Dr. Slowik's and plaintiff's treating therapist's notes reflect that plaintiff had persistently "tangential" "thought process[es]."  Id. at 373, 389, 395, 397, 400, 404.  Further, it was not explained, and the Court cannot determine, whether a borderline Working Memory Index score supports or invalidates other providers' opinions regarding plaintiff's concentration.

### b. Opinions Related to Plaintiff's Physical Limitations

Gilbert Jenouri, M.D., conducted plaintiff's physical consultative examination.  He determined that plaintiff had "[m]ild to moderate restriction[s] walking, standing long periods, bending, stair climbing, lifting, and carrying.  The claimant should avoid smoke, dust, and other respiratory irritants."  T. at 380.  The ALJ found Dr. Jenouri's opinion "partially persuasive.  The totality of the record supported slightly greater restrictions.

Generally, Dr. Jenouri's opinion regarding the nature of the claimant's restriction was consistent with the record, and was supported by the examination findings." Id. at 25.

State agency medical consultant S. Putcha, M.D., opined that plaintiff could occasionally lift or carry twenty pounds, and frequently lift or carry ten pounds. See T. at 93. Plaintiff could also stand, walk, or sit, for "[a]bout 6 hours in an 8-hour workday[.]" Id. Dr. Putcha advised that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation because of her "asthma respiratory precautions." Id. at 94. In the explanation section, Dr. Putcha noted his reliance on a December 2017 orthopedic exam where plaintiff had a "left hip-Trochanteric bursitis" and low back pain, as well as the findings from Dr. Jenouri's consultative examination. Id. The ALJ found Dr. Putcha's opinion to be "partially persuasive. Additional and more severe restrictions were supported by the totality of the record. Dr. Putcha did not have the opportunity to examine the claimant, but Dr. Putcha's opinions were consistent with the record at the time they were rendered." Id. at 24.

Although the ALJ found Dr. Jenouri's and Dr. Putcha's opinions to be "partially persuasive" she did not explain what they relied on in coming to their conclusions—i.e., what supported their opinions. T. at 24; see Carmen M. v. Comm'r of Soc. Sec., No. 20-CV-06532 (MJR), 2021 WL 5410550, at *5 (W.D.N.Y. Nov. 19, 2021) (citations and quotation marks omitted) (remanding because "the ALJ failed to examine what evidence the [plaintiff's treating] sources used to support their opinions and reach their ultimate conclusions[]"; therefore, "the ALJ did not consider the supportability of [the] opinions."); see also Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN/KHP), 2021 WL 363682, at *14 (S.D.N.Y. January 29, 2021) ("Nowhere in the ALJ's decision does she explain,

as the new regulations require, what the respective CEs used to support their opinions and reach their ultimate conclusions."). The ALJ's two-sentence synopsis regarding Dr. Jenouri's and Dr. Putcha's opinions run afoul of the requirements of the applicable regulations because it "precludes the Court from undertaking meaningful review of [the] evaluation of [the] opinion[s]." Jaleesa H., 2022 WL 174337, at *6; see also 20 C.F.R. § 404.1520c(b)(2); Warren I., 2021 WL 860506, at *7 ("Considering the brevity of [the] medical source statement, and lack of supporting explanation, the court questions how the ALJ came to the conclusion that the consultative examiner's opinion constituted substantial evidence for the RFC determination."). The ALJ determined that the record supported additional, greater, or more severe restrictions than either provider concluded. See T. at 24-25. However, in failing to explain what records supported the conclusions, and what records did not, the Court cannot then determine whether the persuasiveness determinations are supported by substantial evidence.

### 2.  Treating Providers

### a. Opinions related to Plaintiff's Physical Limitations

Nathaniel Baer, M.D., treated plaintiff from September to December 2017 for pain in her left knee following a fall. See T. at 279-309. In September 2017, Dr. Baer's treatment note reflected that plaintiff would need four- to six-"weeks of physical therapy before she would be able to work full time on her feet from the knee and ankle standpoint. Part-time work . . . with progressive physical therapy over the coming [six] weeks is likely the most reasonable intermediary step." Id. at 300. The ALJ found this "opinion [to be] minimally persuasive due to the temporary restrictions which were

issued during the acute phase of the claimant's injury.  The basis for the claimant's ability to perform part time work was not supported by the record."  Id. at 25.

Dr. Baer also completed a medical assessment form in September 2017 wherein he noted that plaintiff could work for twenty hours a week for six weeks while participating in treatment and rehab, and that during that time she could stand, walk, sit, and bend for "0 to 2 hours max/day"; could lift and carry ten to twenty pounds; and would need the opportunity to alternate between walking, sitting, standing, and bending "at will" throughout the day.  T. at 413.  The ALJ explained that this opinion "was partially persuasive."  Id. at 25.  The ALJ found "[n]othing in the record indicat[ing] th[e] basis for Dr. Baer's opinion that the claimant was limited to part time work[,] . . . Dr. Baer did not specify whether the limitation to working part time was applicable to all work or only the claimant's past work[,]" and he "did not indicate limitations other than lifting and the record does support additional lim[it]ations."  Id. at 25.  The ALJ did not acknowledge Dr. Baer's opinion that plaintiff could walk, stand, bend, or sit for no more than two hours in a day or determine whether that finding was consistent with, or supported by, the record.  See id. at 25, 413; see also Nicole L. v. Kijakazi, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *9 (N.D.N.Y. Jan. 18, 2022) (remanding because "[a]lthough the ALJ discussed the supportability of certain limitations, . . . he completely ignored others.").  Dr. Baer's treatment notes during the six-week period beginning at the end of September 2017 reflect that plaintiff's pain was primarily in her left hip, left thigh, and lower back with "giveway weakness" in her hip and "4/5 hip flexion."  T. at 293; 287-88, 290.  It is not clear how these symptoms would result solely

in a lifting limitation, and the ALJ does not explain how the records do not support the remaining limitations.  See id. at 25, 413.

To be considered disabled, a plaintiff's limitations must be "expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A); see, e.g., S.J. v. Comm'r of Soc. Sec., No. 3:20-CV-560 (ATB), 2021 WL 1699916, at *11 (N.D.N.Y. Apr. 29, 2021) (finding that substantial evidence supported the ALJ's decision to give opinions less weight because they "only addressed [the] plaintiff's physical condition for the period between May and July 2018 while [the] plaintiff recovered from surgery" and "the broader medical record . . . show[ed] that [the] plaintiff displayed significant recovery[.]").  Although Dr. Baer's medical source statement appears to be limited to the "6 weeks while [plaintiff is] participating in treatment/rehab[,]" his notes following that six-week period reflect that plaintiff "note[d] no significant change in her pain" and she continued to have "[d]ecreased hip range of motion with limited flexion[.]"  T. at 413; 279, 285, 287.

The ALJ's conclusions are confounding because of a lack of explanation.  The ALJ did not discount entirely Dr. Baer's medical source statement because of its temporary nature and instead found the opinion "partially persuasive."  T. at 25. Therefore, it seems that the ALJ considered Dr. Baer's opined lifting and carrying limitation to be consistent with, and supported by, the record.  See id.  However, as to the additional limitations, because the ALJ did not mention them and erroneously stated that "Dr. Baer did not indicate" any other limitations, the Court cannot determine whether the ALJ determined that the record did not support additional limitations because she found them to be limited in duration or for another reason.  Id.  Further, the

ALJ explained that the record supported "slightly greater restrictions" than Dr. Jenouri's opined "mild to moderate restrictions walking, standing long periods, bending, stair climbing, lifting, and carrying[.]"  Id.  It is contradictory to conclude that additional limitations beyond a lifting limitation were not warranted in one instance (Dr. Baer's opinion), but walking, standing, bending, climbing, and carrying limitations were not severe enough, in another (Dr. Jenouri's opinion).  See id.  As the ALJ failed to sufficiently explain what records supported her conclusions, the Court cannot "glean" her rationale.  Mongeur, 722 F.2d at 1040; see also Drollette v. Colvin, No. 8:13-CV-0280 (GTS/CFH), 2014 WL 2880022, at *13 (N.D.N.Y. June 23, 2014) (citation and quotation marks omitted) ("Remand is appropriate . . . when the reviewing court is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.").

Kristen Bishop, A.N.P., submitted a medical questionnaire wherein she opined that plaintiff's gastro-esophageal reflux disease ("GERD") and irritable bowel syndrome—"[p]rimary symptoms are constipation and diarrhea with pain"—would: (1) require unlimited access to the bathroom; (2) cause an "urgent and immediate" need to use the bathroom; (3) cause her to be off task for ten- to fifteen-percent of a workday; and (4) cause her to miss three days per month.  T. at 431-32.  The ALJ found Ms. Bishop's opinion to be "minimally persuasive due to the short treating relationship that Ms. Bishop had with the claimant.  Ms. Bishop's expectation of such severe symptoms was inconsistent with the length of treatment.  The claimant's bowel related impairment of constipation did not support the claimant's need for such frequent bathroom use."  Id. at 25.

22

The record reflects that from December 2018 to January 2019 plaintiff was hospitalized for "extensive colitis/anemia/electrolyte imbalance." T. at 589. Manuja Warnakulasuriya, M.D., plaintiff's primary care physician, noted that after leaving the hospital, plaintiff reported abdominal cramps, but her stools were becoming formed with less frequent bowel movements. See id. In March 2019, Ms. Bishop explained that plaintiff had "intermittent episodes of diarrhea which is chronic for her[,]" and "report[ed] a 60 pound weight loss, severe epigastric pain that is only relieved by drinking milk." Id. at 420. At the same time, plaintiff reported to Dr. Warnakulasuriya that she was experiencing severe abdominal pain in the right upper quadrant for two months with associated fever and nausea and there were no "relieving factors." Id. at 604. By May 2019, Ms. Bishop noted that plaintiff "had resolution of her diarrhea symptoms and in fact her symptoms had returned to constipation which has been a long-term issue as part of her irritable bowel syndrome[]" and she did not report any vomiting, unintentional weight loss, or epigastric pain. Id. at 423. However, despite medications and daily stool softener plaintiff continued to have constipation, pain, nausea, and "frequent breakthrough symptoms" of her GERD. Id. at 423; 425. Ms. Bishop commented that for plaintiff's GERD, she should continue taking medication "along with antireflux lifestyle measures including elevation of the head of the bed, small frequent meals, avoidance of triggers, avoidance of smoking, [] avoidance of eating prior to lying down[,]" limiting the use of NSAID mediations, and "limit[ing] consumption of alcoholic beverages." Id. at 425.

The ALJ addressed the supportability factor as it related to plaintiff's bowel related symptoms, however, she did not explain whether the symptoms from plaintiff's

GERD, reflected in Ms. Bishop's records, support Ms. Bishop's opinion.  See T. at 25.

Further, the ALJ did not discuss the consistency of Ms. Bishop's opinion as required

under the regulations, which defines "consistency" as related to "the evidence from

other medical sources and nonmedical sources in the claim[.]"  20 C.F.R.

§ 404.1520c(c)(2).  The inquiry for the Court is not whether there is evidence to support

plaintiff's claim, but whether substantial evidence supports the ALJ's conclusions.  See

Bonet ex rel. T.B., 523 F. App'x at 59.  However, because the ALJ did not indicate

whether she found Ms. Bishop's opinion supported by the totality of the symptoms

reflected in Ms. Bishop's treatment records, or consistent with the entire record—

particularly Dr. Warnakulasuriya's records indicating similar symptomology—the Court

cannot determine whether the ALJ's decision to find Ms. Bishop's opinion less

persuasive is supported by substantial evidence.  See Kathleen M. v. Comm'r of Soc.

Sec., No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *7 (N.D.N.Y. Jan. 10, 2022)

(remanding because "the ALJ explained she was 'more persuaded by [another]

assessment, as it appears to be better supported and more consistent with the record

as a whole' . . . [but t]his comparative conclusion offers no insight into how the ALJ

evaluated [the] medical opinion under the supportability and consistency factors . . . with

sufficient specificity to enable this Court to decide whether the persuasive value

assigned . . . is supported by substantial evidence.").

　　　　Sajid Khan, M.D., plaintiff's pain management provider, opined that because of

plaintiff's fibromyalgia and "tenderness," she would be off task between fifteen and

twenty percent of a workday, would be absent two days a month, could sit for six hours,

would need to change positions every thirty minutes, could stand and walk for two

hours, and should never lift over ten pounds.  T. at 471-72.  The ALJ found Dr. Khan's opinion to be "partially persuasive.  Dr. Khan's limitations of the claimant being off task and absences were speculative.[8]  Otherwise, Dr. Khan's opinion was consistent with the record."  Id. at 26.

Plaintiff's pain management records reflect that plaintiff consistently presented with headaches, neck pain, and low back pain.[9]  See T. at 529, 537, 554, 551, 559.  Plaintiff reported severe neck pain that was aggravated by "bending, driving, exertion, rotation, turning head and twisting."  Id. at 529, 551.  Her low back pain was aggravated by ascending and descending stairs and resulted in a loss of balance.  See id. at 537.  On examination, Dr. Khan noted tenderness and spasms in plaintiff's lumbar spine and buttock with "[t]rigger points palpated in the lumbar paraspinals both sides."  Id. at 539.  Dr. Khan noted an active painful range of motion and a decreased passive range of motion in plaintiff's cervical spine and "[m]aximum tenderness" in plaintiff's right greater occipital nerve."  Id. at 554.  He also noted mild pain and mild restrictions in extension and bending of the lumbar spine.  See id. at 554-555.

The ALJ did not state a level of supportability related to Dr. Khan's opinion.  See T. at 26; see Warren I., 2021 WL 860506, at *8 (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5858 (S.S.A. Jan. 18, 2017)) ("The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or

_____

[8] To the extent the Commissioner argues that Dr. Khan did not diagnose or treat plaintiff for fibromyalgia, the ALJ did not reject Dr. Khan's time-off task limitation on this ground.  See Dkt. No. 18 at 8.

[9] Plaintiff was seen by Dr. Khan and Oana Stingu, RPAC, for pain management.  See T. at 558, 565.

court.'").  The Commissioner argues that the ALJ's failure to address the supportability

factor is harmless error "because Dr. Khan's limitations are consistent with the RFC."

Dkt. No. 18 at 26.  However, although the ALJ incorporated most of Dr. Khan's

limitations, she did not incorporate his time off task or absenteeism limitation, claiming it

to be "speculative."  T. at 26.  Without discussing whether Dr. Kahn's "objective medical

evidence and [] explanations"—the severe pain, tenderness, spasms, and limited range

of motion reflected in Dr. Khan's records—supported his opinion, the Court disagrees

that the ALJ's failure to discuss supportability is harmless error.  20 C.F.R.

§ 404.1520c(c)(1).  Moreover, the ALJ did not state, but seemingly found, Dr. Khan's

time off task limitation to be inconsistent with the record but failed to reconcile that

implicit conclusion with four other providers' opined off task limitation.  See T. at 26.

This is particularly noteworthy because, as discussed below, this opinion is work

preclusive.  See David H. v. Comm'r of Soc. Sec., No. 20-CV-6357 (LJV), 2021 WL

5371464, at *4 (W.D.N.Y. Nov. 18, 2021) ("Had the ALJ properly compared [the] opinion

with the other opinions and medical evidence and evaluated it in light of the medical

evidence supporting it, that might well have resulted in an RFC that rendered David

disabled."); but see Sandra D. v. Comm'r of Soc. Sec., No. 5:20-CV-1067 (LEK/ATB),

2022 WL 344058, at *2, 6 n.1 (N.D.N.Y. Feb. 4, 2022) (finding no error in the ALJ's

conclusion that a time off task limitation "was speculative and not supported by any

objective evidence[]" because it was "the only opinion to specifically address off-task

time" and "the record does address the issue, but conspicuously lacks any mention of

the necessity of greater limitation, that [the p]laintiff cannot remain on task during or

after a position switch.  Thus, the ALJ was entitled to find that [the p]laintiff could remain on task.").

Treating physician Henda Bouali, M.D., and C. O'Brien, FNP,[10] completed a medical questionnaire noting that plaintiff's fibromyalgia and low-back pain would cause her to be off task between twenty and thirty percent of a workday and miss more than three days a month.  See T. at 624-25.  Dr. Bouali and Ms. O'Brien also determined that plaintiff could sit, stand, and walk for four hours; would need to change positions every hour; and could occasionally lift over ten pounds.  See id. at 625.  The ALJ found the opinion to be "partially persuasive.  The claimant's absenteeism and off task limitations were speculative.  The record did not support such restrictive limitations on the claimant's ability to sit.  Otherwise, however, the limitations set forth were consistent with the record."  Id. at 26.

The ALJ explained that, "[i]n January 2018, the claimant had muscle spasm in the cervical spine, and tenderness in the left knee and left hip[.]"  T. at 22 (citing T. at 478).  However, a review of the record reveals that throughout 2018 and 2019 plaintiff's pain was persistent, with her pain level varying between three to ten out of ten but most often an eight.  See id. at 279, 285, 481, 487, 503, 537, 571, 575, 604.  As explained above, plaintiff's pain management records revealed that her back pain was aggravated by ascending and descending stairs.  See id. at 537.  Further, her back pain caused an associated loss of balance, trigger points and spasms in lumbar spine and buttock, and a decreased active range of motion in her lumbar spine.  See id. at 287, 484, 499, 506,

---

[10] The medical questionnaire has Ms. O'Brien's signature above Dr. Bouali's name; therefore, the ALJ refers to it as both individuals' opinion.  See T. at 625.

538-39, 546, 554, 571.  The record also notes that plaintiff "failed physical therapy and her neck and headache is worsening.  X-ray shows retrolisthesis at 3 levels.  MRI for significant left biceps and triceps weakness was ordered. . . .  Return in 4 weeks with Dr. Khan or sooner if needed."  Id. at 562.  The ALJ noted plaintiff's subjectively "reported pain was precipitated by activity" but, in reviewing the medical opinions, did not mention the objective examination findings by multiple providers who observed pain with movement, limited ranges of motion, spasms, and tenderness.  Id. at 22-36.

The Commissioner contends that "[b]ecause [Dr. Bouali and Ms. O'Brien] identified no justification for their limitations and the record contains no treatment notes from them, there was no supported evidence to discuss."  Dkt. No. 18 at 26.  First, Dr. Bouali and Ms. O'Brien credited plaintiff's limitations to her "[f]ibromyalgia and low back pain.  Patient taking [Savella] and using a muscle relaxer as needed.  Recommended referral to aqua therapy."  T. at 624.  Second, the record contains treatment records from Ms. O'Brien during two of plaintiff's rheumatology follow-ups.[11]  See id. at 502, 510.  In March 2019, plaintiff "present[ed] for myalgia, Vit D deficiency, low back pain and left knee pain."  Id. at 495.  An examination revealed that plaintiff had mild- to moderate-pain with motion in her spine, but a normal gait and otherwise normal range of motion.  See id. at 499.  For plaintiff's myalgia, Ms. O'Brien noted that plaintiff was unable to find relief with the attempted medications and she had an upcoming appointment with Dr. Khan for pain management.  Id. at 500.  As to her low back, Ms. O'Brien noted that plaintiff was doing well on and continuing with her current medication.  See id.  Plaintiff again saw Ms. O'Brien in June 2019 for her joint pain and

---

[11] Plaintiff went to UHS for primary care, rheumatology, orthopedics podiatry, and pain management.  See T. at 279-370, 517-619.  The record does not contain a treatment note from Dr. Bouali.

her "[s]everity level [was] 10.  It occurs constantly and is stable. . .  The pain is relieved by elevation, rest, siting and laying down.  Associated symptoms include decreased mobility, difficulty imitating sleep, joint instability, joint tenderness, nocturnal awakening, nocturnal pain, numbness, spasms and weakness."  Id. at 503.  An examination revealed moderate and mild pain with range of motion in plaintiff's spine, hip, and knees.  See id. at 506.  Ms. O'Brien noted that plaintiff would try a new medication, Savella, for her fibromyalgia because she had not tolerated others, that her low-back pain was still being controlled with medication, and that she would try aquatherapy for her hip instability.  See id. at 507.

The ALJ did not discuss how Ms. O'Brien's and Dr. Bouali's opinion was inconsistent with Ms. O'Brien's records which reflected plaintiff's continued pain with range of motion and her continued attempts to find a medication or alternative therapies to resolve that pain.  See T. at 26; see also Warren I., 2021 WL 860506, at *7 ("The new rules provide that the [supportability] of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase.");  Baker v. Berryhill, No. 17-CV-8433 (AT/DF), 2019 WL 1062110, at *30 (S.D.N.Y. Feb. 19, 2019), report and recommendation adopted, No. 17-CV-8433 (ATD/CF), 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019) ("The ALJ erroneously failed to acknowledge any of this evidence, let alone reconcile it with his findings.").  As to plaintiff's ability to sit, Ms. O'Brien and Dr. Bouali determined that plaintiff could sit for four hours, Drs. Khan and Putcha opined that she could sit for six hours, and Dr. Baer found that she could sit for two hours.  See T. at 94, 413, 471, 625.  As explained, the ALJ appeared to find Dr. Baer's lifting limitation persuasive despite it being of limited duration but made no finding related to

29

Dr. Baer's sitting limitation.  See id. at 24.  Because Dr. Baer's opined sitting limitation was stricter that Dr. Bouali's and Ms. O'Brien's—limiting plaintiff to sitting for two hours—and the ALJ did not explicitly review Dr. Baer's opinion, it is unclear whether Dr. Bouali's and Ms. O'Brien's opinion limiting plaintiff to four hours of sitting is unsupported.  See id.

### b. Opinions Related to Plaintiff's Mental Limitations

Plaintiff's therapist Theresa Dearie, LCSW, completed a medical assessment form and opined that plaintiff was moderately limited in understanding and remembering instructions, interacting appropriately with others in a work setting, and maintaining personal hygiene.  See T. at 415.  She concluded that plaintiff was very limited in understanding, remembering, and carrying out instructions; maintaining attention and concentration; making appropriate decisions; maintaining socially-appropriate behavior; and functioning in a work setting at a consistent pace.  See id.  Ms. Dearie also opined that plaintiff would be absent from work ten or more days per month.  See id.  The ALJ found Ms. Dearie's opinion to be "partially persuasive" because, "[w]hile the nature of the limitations . . . were consistent with the record, the severity of the limitations were not.  While the record does indicate significant mental findings, the claimant is still capable of taking care of her activities of daily living and care for a young child without assistance."  Id. at 25.

The ALJ explained that "providers noted [plaintiff's] mood and affect were normal and appropriate . . . her insight was normal without delusions or hallucinations, and [she] denied suicidal or homicidal ideation"; however, "[i]n June 2019, [plaintiff] was noted with a tangential thought process, poor confidence, and poor insight."  T. at 23

(citing T. at 441).  The ALJ is correct that plaintiff sometimes presented with a normal mood and affect.  See id. at 322, 340, 361, 421, 499, 562, 608.  However, the ALJ did not reference Ms. Dearie's remaining treatment records.  See id. at 23-25.  Ms. Dearie's counseling record indicates that throughout 2017, 2018, and 2019, plaintiff's thought processes were tangential and she had poor insight and impaired judgment.  See id. at 388-89, 395, 397, 400, 404.  Ms. Dearie also noted that there was "[e]vidence seen of poor memory and learning disabilities."  Id. at 446.  The ALJ also did not discuss Dr. Slowik's finding that plaintiff's "thought processes were often tangential and at times totally out of context to the conversation" or notes from plaintiff's primary care physician reflecting "[i]nappropriate mood and affect.  Flight of ideas.  Hopelessness. Inappropriate affect – flat.  Poor insight.  Pressured speech."  Id. at 25, 373, 395, 415, 444-47, 451-53, 596, 578, 617.  By failing to acknowledge these records, the Court cannot discern the ALJ's rationale in determining that the severity of Ms. Dearie's proposed limitations was inconsistent with the record.  See Stacey v. Comm'r of Soc. Sec. Admin., 799 F. App'x 7, 10 (2d Cir. 2020) (summary order) ("[W]e have cautioned ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions.").

Plaintiff's primary care physician Dr. Warnakulasuriya determined that based on plaintiff's "[b]ipolar disorder with depression" and anxiety, she had (1) marked limitations in maintaining regular attendance, accepting instructions, responding appropriately to criticism, getting along with co-workers, and responding appropriately to stressors in a work setting; and (2) extreme limitations in maintaining attention and concentration, performing activities within a schedule, and interacting appropriately with the public.  T.

at 513-14.  Additionally, Dr. Warnakulasuriya opined that plaintiff would be off task for more than thirty-three percent of a workday and miss three or more days per month. See id. at 514.  The ALJ concluded that "Dr. Warnakulasuriya's opinion was not persuasive."  Id. at 26.  The ALJ explained that Dr. Warnakulasuriya's limitations regarding plaintiff being off task or absent from work "were speculative."  Id.  Moreover, the ALJ observed that plaintiff "does not live in a supportive environment, and . . . is able to perform activities of daily living without assistance.  The claimant was able to attend medical appointments, advise her doctors of her medical history, live alone, and provide for her child.  These activities contradicted the severity of the limitations noted by Dr. Warnakulasuriya."  Id.  Dr. Warnakulasuriya's treatment notes reflect that in 2018 and 2019, plaintiff had "poor attention span and concentration," pressured speech, "inappropriate mood and affect[,]" "flight of ideas" and "difficulty concentrating."  Id. at 578, 586, 617.  The ALJ did not explain the extent to which Dr. Warnakulasuriya's opinion was consistent with, or supported by, his own notes or the medical record as a whole.  See id. at 26.

The ALJ discounted Ms. Dearie's and Dr. Warnakulasuriya's opinions because plaintiff was "still capable of taking care of her activities of daily living[,] car[ing] for a young child without assistance[,]" "attend[ing] medical appointments, [and] advis[ing] her doctors of her medical history."  T. at 25-26.  The ALJ stated that plaintiff "reported being able to shop, go out alone, cook, do laundry, clean, bathe, dress, and groom herself . . . she lived alone with her 15-month-old daughter . . . [and] she walked daily because she did not have a car[.]"  Id. at 23.  The ALJ cited three records to support plaintiff's activities of daily living: Dr. Jenouri's physical consultative examination and

two treatment records from Staci J. Olsen, M.D.  See id. at 23-26, 331, 343, 377-80.  Dr. Jenouri noted that plaintiff "reports cooking five times a week.  She shops on occasion. She showers and dresses on occasion.  She watches TV and listens to the radio."  Id. at 377.  The record the ALJ cited to support the contention that plaintiff lived alone with her fifteen-month-old daughter reads: "Patient states that July 15 she rolled down a hill while chasing her daughter and injured her left knee and left foot.  Pt is currently being seen by orthopedic and PT for her left knee. . . .  Patient is unable to hold her 15 month old daughter."  Id. at 343.  The record the ALJ cited to support the contention that plaintiff walks everywhere because she does not have a car also stated that plaintiff's "daughter [occasionally] goes to stay with Godparents . . . ."  Id. at 331.  Ms. Dearie noted that plaintiff had "some family who do help with the baby at times."  Id. at 440

During her hearing, plaintiff testified that her daughter, who was three years old at the time, plays with her toys or sits on plaintiff's lap playing with her tablet.  See T. at 52-53.  She explained that she does not like leaving the house and only goes out on her deck if her daughter wants to play outside, and a friend takes plaintiff and her daughter to the park.  See id. at 59-60.  She also testified that she uses paper plates because she loses feeling in her hands if she cleans for too long, her "best friend does [her] laundry[,]" and her neighbor carries her groceries inside.  Id. at 53-55; see Baker, 2019 WL 1062110, at *28 ("It should also be noted that, even if [the] [p]laintiff was able to perform certain activities of daily living, this would not have precluded a finding of disability, especially if she could only perform those activities to a limited extent or needed assistance to engage in them."); but see Freund v. Berryhill, No. 17-CV-9967 (JOP), 2019 WL 1323992, at *12 (S.D.N.Y. Mar. 25, 2019) (citing Ellington v. Astrue,

641 F. Supp. 2d 322, 332 (S.D.N.Y. 2009)) ("If a claimant performs housework on a daily basis, the ALJ can consider such work as evidence that the claimant is not disabled.").

In her function report, plaintiff explained: a friend watches her daughter when she has appointments; putting shoes on is difficult; her arms and shoulders hurt when she brushes her hair; she has trouble getting off of the toilet; she "put[s] sticky notes for reminders to take shower"; she only goes outside for her appointments; she goes shopping once a month, but had not gone in three months; she can pay bills and count change but she is finding it harder to concentrate; and she has trouble remembering things if they are not written down.  T. at 235-42.  Dr. Slowik noted in her consultative examination that plaintiff would need help managing funds because of self-reported difficulty in that area.  See id. at 375.

It appears that the ALJ omitted relevant testimony and information related to plaintiff's activities of daily living and cited only the portions of the record that support the RFC.  Thus, the Court cannot reconcile the ALJ's decision to find the various medical opinions less persuasive because of those activities.  See Amber H., 2021 WL 2076219, at *6 ("Considering [the] plaintiff's statements regarding her activities of daily living in their totality, the court cannot agree that they are consistent with, or constitute substantial evidence of, [the] plaintiff's purported ability to perform the lifting, walking, or standing requirements of light work."); Pamela P., 2020 WL 2561106, at *6 ("There is no apparent connection between" "[t]he daily activities identified by the ALJ includ[ing] [the] [p]laintiff's ability to dress, bathe, and groom herself, prepare meals, grocery shop, provide childcare, and do laundry" and the "[p]laintiff's mental functional abilities."); but

see Williams v. Colvin, No. 14-CV-947S (WMS), 2017 WL 3404759, at *7 (W.D.N.Y. Aug. 9, 2017) (finding no error where "the ALJ considered [the p]laintiff's ability to perform basic activities when he determined that it contradicted [a medical] opinion, [but] he also considered [the p]laintiff's symptoms and the objective medical record."). The ALJ's reliance on plaintiff's activities of daily living to discount the medical opinions is especially problematic when it is viewed in combination with the insufficient review of the medical opinions under the consistency and supportability factors, as discussed above.

### 3. Medical Opinions Related to Time-Off Task and Absenteeism

Five medical providers opined that plaintiff would be off task or absent from work because of her mental or physical impairments: (1) Ms. Dearie opined that plaintiff would miss ten days per month; (2) Ms. Bishop determined that she would be off task for ten- to fifteen-percent of a day and miss three days per month; (3) Dr. Khan stated that plaintiff would be off task twenty percent of the day and miss two day per month; (4) Dr. Warnakulasuriya opined that plaintiff would be off task for thirty-three percent of the day and miss three or more days per month; and (5) Ms. O'Brien and Dr. Bouali found that plaintiff would be off task between twenty and thirty-three percent of a workday and miss three days per month.  See T. at 415, 432, 471-72, 514, 624.  Each opinion is work preclusive because the vocational expert testified that "[a]nything greater" than one unexcused absence per month or more than fifteen percent off task "rules out all employment."  Id. at 79.  The ALJ did not reconcile these opinions.  Under the specific circumstances of this case, the ALJ's failure to explain sufficiently the supportability and consistency of each opinion relating to time off task and absenteeism

with the treatment record and the other opinions requires remand.[12]  Compare Pamela P., 2020 WL 2561106, at *6 (remanding where "[a]ll of the opinions . . . recognize that [the] [p]laintiff has some degree of limitation in her ability to attend and concentrate on the job, though those opinions range from some degree of moderate limitation to an extreme limitation."), with Tamara M. v. Saul, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *10 (N.D.N.Y. Mar. 30, 2021) ("That [two] [treating providers] reached similar but conclusory findings does not entitle either of them to greater weight – their consistency with each other does not equate to consistency with the overall medical treatment notes or the other well-supported medical opinions.").

As the Commissioner points out, this Court has rejected arguments similar to plaintiff's regarding an ALJ's determination that a time off task limitation is speculative. See Dkt. No. 18 at 13; see Amanda R. v. Comm'r of Soc. Sec., No. 6:20-CV-596 (DNH), 2021 WL 3629161, at *6 (N.D.N.Y. Aug. 17, 2021).  The Commissioner relies primarily on Tamara M.; however, there, the ALJ applied the treating physician rule and explained that "in finding several medical records indicating normal or less than severe findings, the ALJ reasonably concluded that [two] highly restrictive opinions were unsupported by their treatment notes, and, therefore, were speculative."  2021 WL 1198359, at *8.  Moreover, "only [one] acceptable medical source [] conclude[d] that these limitations were above a moderate degree of restriction."  Id. at *4.  Here, the ALJ

---

[12] The Commissioner argues that the opinions that provided a time off task or absenteeism limitation are less persuasive "because the providers gave no explanation for their limitations and their treatment notes did not supply that missing justification" but the ALJ found that the opinions of those who opined no time off task limitations to be persuasive because they "included narrative explanations and identified objective findings to support their limitations." Dkt. No. 18 at 3, 15.  The ALJ did not articulate this reasoning in her decision, and the Court will not consider post hoc rationalizations. See Tasha W. v. Comm'r of Soc. Sec., No. 3:20-CV-731 (TWD), 2021 WL 2952867, at *8 (N.D.N.Y. July 14, 2021) ("Post hoc explanations do not constitute substantial evidence.").

was bound by the new regulations to "explain how [she] considered the supportability and consistency factors for [the] medical source's medical opinions[.]"  20 C.F.R. § 404.1520c(b)(2).  Stating that a portion of an opinion is "speculative" without reference to that provider's records or the record as a whole does not explain the supportability or consistency of the opinion such that the Court can glean the ALJ's rationale.  Further, unlike Tamara M., all five medical opinions opining off-task limitations are work preclusive.  See T. at 24-26.

This Court has explained that findings related to time off task or absenteeism present "analytical difficulty" because "neither . . . can be readily confirmed or dispelled just by examining treatment notes or objective criteria . . . [but] rest in some substantial part on the black box of the treating providers' experience with [the] plaintiff's various conditions."  Amanda R., 2021 WL 3629161, at *8.  "Thus, one place an ALJ can look to analyze this issue is to other opinions in the record that examine the overall severity of a claimant's mental impairments in the relevant functional area."  Id.  "Another place an ALJ can look is to a claimant's activities of daily living, which sometimes shed light on the ability to make and keep a routine and/or a daily schedule."  Id. (explaining that the ALJ appropriately noted that the time off task opinions appeared "with[out] a clear record-based explanation[,]" and appropriately recounted the records indicating the "relatively 'mild' mental limitations caused by [the] plaintiff's bipolar disorder" and "[the] plaintiff's self-reported ability to perform a fairly wide range of activities of daily living[]").

Here, the ALJ did not appropriately review the severity of plaintiff's limitations in considering how they affect plaintiff's ability to remain on task or regularly attend work, nor did she reconcile the five opinions opining off-task limitations with one another.  See

37

T. at 22-26.  Additionally, although the ALJ reviewed plaintiff's activities of daily living, she seemingly ignored records that indicated that plaintiff was less capable.  Without sufficient explanations in both areas, the Court cannot determine whether the ALJ's decision regarding plaintiff's time off task and absenteeism is supported by substantial evidence.  Accordingly, remand is warranted for further consideration of the supportability and consistency factors considering the entire record.  See, e.g., Nicole L., 2022 WL 160274, at *10 (remanding for consideration of the plaintiff's "overall RFC" and the consistency and supportability of the medical opinions of record).

## B. Equally-Persuasive Opinions

Plaintiff raises a related argument that the ALJ erred by "never articulat[ing] how [s]he considered the additional factors in § 404.1520c(c)(3)-(5)[.]"  Dkt. No. 13 at 23.  The Commissioner argues that the ALJ was not required to review the remaining 20 C.F.R. § 404.1520c(c) factors because, "although the ALJ described different opinions as being minimally or partially persuasive, those opinions were not identical[]" and the ALJ did not find "two or more medical opinions . . . equally well-supported."  Dkt. No. 18 at 26.

The regulation states:

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.  When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(3).  Given the relative novelty of the regulations, there is a dearth of caselaw interpreting what triggers the ALJ's responsibility to discuss the "other most persuasive factors[.]"  20 C.F.R. § 404.1520c(b)(3).  The SSA, in providing comments on the regulations, explained that, "[b]ecause the content of evidence, including medical opinions . . . , varies with each unique claim, it would not be appropriate to set out a detailed rule for when this situation may occur.  We expect that each adjudicator will use his or her discretion to determine when this situation occurs."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (SSA Jan. 18, 2017).  Further, the SSA stated that, "[u]nder final sections 404.1520c(b)(3) and 416.920c(b)(3), the medical opinions . . . must be 'both equally well-supported' under sections 404.1520c(c)(1) or 416.920c(c)(1) 'and consistent with the record' under sections 404.1520c(c)(2) or 416.920c(c)(2).  In addition, the opinions or prior administrative medical findings must not be 'exactly the same.'"  Id. (emphasis added).  The Court therefore reads the regulations, in combination with the SSA's comments, to mean that for the ALJ to be required to discuss the remaining factors he or she must find that two medical opinions: (1) address the same issue; (2) are both well-supported (meaning that a finding that two opinions are unpersuasive would not trigger this requirement); (3) are both consistent with the record; and (4) the opined limitations or conclusions are not identical.  See Kelly B.R. v. Kilakazi, No. 2:20-CV-00339 (JHR), 2022 WL 204634, at *4 (D. Me. Jan. 23, 2022) ("[M]erely using the same descriptor for two or more opinions (e.g., 'not very persuasive') does not render them 'equally persuasive.'  The ALJ neither characterized any two or more opinions or administrative findings as 'equally persuasive' nor made the underlying nuanced

findings [that they were equally well-supported and consistent] supporting such a characterization[.]"); Parr v. Comm. of Soc. Sec., No. 2:20-CV-13173, 2021 WL 5986920, at *8 (E.D. Mich. Aug. 31, 2021), report and recommendation adopted, 2021 WL 5370483 (E.D. Mich. Nov. 18, 2021) ("When medical opinions or prior administrative findings are 'equally persuasive,' 'well-supported' and 'consistent with the record' [and are] 'about the same issue,' 'but are not exactly the same,' [the ALJ] will articulate how [he or she] considered the other most persuasive factors[.]").

Here, it appears that there are two medical opinions that trigger this requirement. The ALJ found Dr. Putcha's and Dr. Jenouri's opinions to be "partially persuasive." T. at 24-25. Both opinions were addressing the same issue—plaintiff's physical limitations. See id. at 93-94, 380. The ALJ found that they were "consistent with the record[.]" Id. at 24-25. The ALJ also found that in both instances, the record supported "additional and more severe restrictions" or "slightly greater restrictions" but were otherwise well-supported. Id. at 24-25. Finally, the physicians opined different physical limitations. See id. at 93-94, 380. Although the Court is ordering remand because of the deficiencies in the ALJ's review of the consistency and supportability factors, on remand the Commissioner should note the remainder of the additional factors when required to do so by the regulations.[13]

---

[13] As remand is required, the Court does not reach plaintiff's remaining arguments concerning the ALJ's RFC and step-five determinations, and the alleged deficiencies in Dr. Kamin's opinion. See Dkt. No. 13 at 25-27; see also Devra B. B. v. Comm'r of Soc. Sec., No. 6:20-CV-00643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments.").

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 13, is **GRANTED**; and it is further

**ORDERED**, that defendant's Cross-Motion for Judgment on the Pleadings, Dkt. No. 18, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED.**

Dated:  February 18, 2022
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge